**SO ORDERED.**

**SIGNED this 15 day of October, 2014.**

*Stephani W. Humrickhouse*
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

LINDY CREECH FAISON,             CASE NO. 13-04549-8-SWH

    DEBTOR

JAMES B. ANGELL, CHAPTER 7 TRUSTEE,

    Plaintiff             ADVERSARY PROCEEDING
                                  NO. 13-00165-8-SWH

    v.

O. WILLIAM FAISON,

    Defendant.

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**

The matters before the court in this adversary proceeding are (1) the motion for summary judgment filed by the plaintiff and chapter 7 trustee, James B. Angell, and (2) the motion for partial summary judgment filed by the defendant, O. William Faison. A hearing took place in Raleigh, North Carolina on June 5, 2014.

Background

Lindy Creech Faison ("Lindy")[1] filed a petition for relief under chapter 7 of the Bankruptcy Code on July 22, 2013.  Many years prior to filing the bankruptcy petition, Lindy married O. William Faison ("Bill"), on March 26, 1988, having executed a premarital agreement on March 11, 1988.  Between May of 1988 and October of 2002, Lindy and Bill acquired approximately ten parcels of real property in North Carolina (the "Disputed NC Properties"), as well as one parcel in Virginia (the "Disputed VA Property") (collectively, the "Subject Properties").  Lindy and Bill took title to each of the Subject Properties jointly, as tenants by the entireties.  Additionally, Lindy and Bill executed an operating agreement on January 1, 1998, creating Pheasant Field Farm, LLC (the "LLC").  According to the agreement, Lindy holds a 20% interest in the company, while Bill holds an 80% interest.

In 2009, however, the couple separated, and Lindy filed a complaint on or around August 30, 2010, in Orange County District Court (the "State Court Proceeding"), seeking, among other things, equitable distribution of property.  Specifically, Lindy sought "an unequal distribution of marital and divisible property."  Complaint, ¶ 21, Faison v. Faison, 10 CVD 1513.  The complaint provides that the parties "acquired real and personal property during the marriage that is marital and divisible property subject to equitable distribution."  Id. at ¶ 14. On September 22, 2010, Bill filed a motion for a declaration of separate property pursuant to the premarital agreement, which listed numerous interests in business entities, motor vehicles, and certain real properties, none of which are the Subject Properties.  On October 27, 2010, Lindy filed various Notices of Lis Pendens in

---

[1] For purposes of clarity, the court will refer to the debtor, Lindy Creech Faison, as "Lindy," and the defendant, O. William Faison, as "Bill."

2

Orange County, North Carolina, as well as one in Mecklenburg County, Virginia, corresponding to each of the Subject Properties. The notices provided the party names and case number of the State Court Proceeding, stating "[t]hat the object of said action is for equitable distribution and to preserve claims to the property of said parties." Doc. No. 28, Exh. 13-22, 30.

The divorce judgment was entered on November 15, 2010. On October 31, 2011, Bill filed his answer in the State Court Proceeding, asserting that although property was acquired during the marriage, its ownership is controlled by the terms of the premarital agreement, which "substantially limit or bar in their entirety the Plaintiff's claims for alimony, post-separation support, and equitable distribution."[2] Def.'s Motions, Answer, and Counterclaim, pg. 6, Faison v. Faison, 10 CVD 1513. The answer further affirmatively pleads the premarital agreement as a bar and/or limitation to Lindy's claims. Id. After various other filings, Bill filed an amended motion for declaration of separate property pursuant to the premarital agreement on January 17, 2013, which incorporates the prior such motion, and additionally seeks a determination that the Subject Properties are Bill's separate property. The State Court Proceeding remained pending when Lindy filed her chapter 7 petition on July 22, 2013. On September 27, 2013, James B. Angell, the chapter 7 trustee, initiated an adversary proceeding seeking to sell the Subject Properties free and clear of Bill's interest in the properties, which became a one-half undivided interest as a tenant in common upon the divorce.

On October 1, 2013, the trustee initiated the adversary proceeding currently before the court, to determine the validity, priority, or extent of any lien or interest asserted by Bill, based on the State

---

[2] Along with the answer, Bill filed a motion to strike various parts of the complaint as irrelevant, immaterial, impertinent, or scandalous, as well as a counterclaim alleging that Lindy breached the premarital agreement by cancelling a power of attorney regarding the transfer of property. The counterclaim was subsequently voluntarily dismissed on January 17, 2012.

Court Proceeding, in the Subject Properties and the LLC.[3] According to the amended complaint, filed on March 4, 2014, any lien or interest asserted by Bill in the Subject Properties and the LLC is illusory and unenforceable, and should be avoided pursuant to §§ 544 and 547 of the Bankruptcy Code. Under § 544(a)(1), the trustee essentially contends that if he steps into the shoes of a judicial lien creditor, his interest in the Subject Properties and the LLC has priority over Bill's purported interest, and therefore Bill's claimed interest should be avoided, leaving Bill with a general unsecured claim based on his claims in the State Court Proceeding. The trustee further contends that as a hypothetical bona fide purchaser for value pursuant to § 544(a)(3), he does not have constructive notice of Bill's purported interest in the Subject Properties or the LLC, and therefore Bill's claimed interest should be likewise be avoided. Additionally, the trustee argues pursuant to § 547 that to the extent the combination of Bill's renewed motion for declaration of separate property and the Notices of Lis Pendens provide constructive notice of his purported interests, the lis pendens are avoidable as preferences. Thus, the trustee asserts that there are no genuine issues of material fact, and summary judgment should be entered in his favor.

Bill, on the other hand, contends that although Lindy's schedules assert an undivided one-half interest in the Subject Properties and a 20% interest in the LLC, Lindy holds nothing more than

---

[3] Additionally, on September 20, 2013, the trustee filed a Notice of Removal as to the State Court Proceeding, removing the matter to the United States Bankruptcy Court for the Middle District of North Carolina. A consent order was entered on November 12, 2013, pursuant to which the parties agreed to transfer venue to this court. Upon transfer of the case, a motion to remand or abstain from hearing the matter was pending, however, this court entered an order on January 7, 2014, which defers decision on the motion until the present adversary proceeding is resolved. On the same day, this court entered an order deferring ruling on a motion filed by Bill for relief from the automatic stay in order to proceed in state court until after the resolution of this adversary proceeding.

bare legal title in these assets, by virtue of the premarital agreement, under which these assets are Bill's separate property. According to Bill, the Notices of Lis Pendens that Lindy filed were sufficient to place a title searcher on notice of a dispute regarding title, and when reviewed alongside the complaint and answer, these filings provide constructive notice that title is at issue, such that a lien creditor or prospective purchaser would know they would be bound by the outcome of the State Court Proceeding, as it pertains to the property being searched. As Bill's answer asserts counterclaims not currently before the court, summary judgment is sought only on the trustee's causes of action, along with a declaration that Bill's claimed interests in the Subject Properties and the LLC are not subject to avoidance by the trustee, and that any ruling on such matters in the State Court Proceeding will be binding on Lindy and the trustee.

## Discussion

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has

5

established his right to a judgment with such clarity as to leave no room for controversy." Portis v. Folk Constr. Co., 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

The trustee first seeks relief under § 544, which provides

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> >
> > (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
> >
> > (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). The court will consider the trustee's claims under §§ 544(a)(1) and (a)(3), but not under § 544(a)(2), based on the absence of pursuit of a claim under this subsection, other than in the complaint, either in writing or during oral argument. As such, the court will consider any claim under § 544(a)(2) abandoned.

A.      Section 544(a)(1): The Trustee as a Judicial Lien Creditor

Pursuant to § 544(a)(1), the trustee attains the status of a judicial lien creditor on all property

as of the date of the bankruptcy petition. 11 U.S.C. § 544(a)(1). State law applies in determining the rights and relative priority of the trustee as a hypothetical judicial lien creditor. See Meade v. Bank of Am. (In re Meade), Adv. No. 10-00280-JRL, (Bankr. E.D.N.C. July 29, 2011), aff'd, Bank of Am. v. Meade, 2012 U.S. Dist. LEXIS 96071 (E.D.N.C. July 9, 2012). "Notice or knowledge are not factors to be considered." In re Millerburg, 61 B.R. 125, 128 (Bankr. E.D.N.C. May 2, 1986). The trustee may therefore avoid any competing interest over which a judicial lien creditor would have priority as of the petition date. Id.

In this matter, on the petition date, the chain of title for each of the Disputed NC Properties contained a Notice of Lis Pendens that had been filed in 2010 in connection with the State Court Proceeding. The significance of the lis pendens as to a bankruptcy trustee is that although the trustee may obtain a lien as a hypothetical judicial lien creditor on the petition date, his interest is subject to the outcome of the State Court Proceeding. In a similar case, In re Suggs, 355 B.R. 525 (Bankr. M.D.N.C. Oct. 16, 2006), a creditor filed a lawsuit in state court seeking a declaration that Ms. Gloria Suggs was the owner of certain real property, and contemporaneously filed a notice of lis pendens. One month later, Ms. Suggs filed a bankruptcy petition, and the creditor sought relief from the automatic stay in order to continue prosecuting an action pending in the state court. The bankruptcy court granted relief, holding that by virtue of the pre-petition lis pendens, the creditor had priority over the trustee's claims as a hypothetical lien creditor. Likewise, the court in Ivester v. Miller, 398 B.R. 408 (M.D.N.C. 2008), held that by filing a lis pendens, the Ivesters, who held an attachment lien, "staked their place in line ahead of other creditors, including the [bankruptcy] Trustee." 398 B.R. 408, 419. The Ivester court further noted that the Ivester's priority position would remain superior to that of the trustee as long as the state court action remained viable and

until the Ivesters successfully proceeded to judgment. Id. at 419-20. Accordingly, the trustee in the present action has an interest in the Disputed NC Properties equivalent to that of a judicial lien creditor, however his interest is subject to the outcome of the State Court Proceeding. The trustee therefore cannot avoid any interest held by Bill for purposes of § 544(a)(1).

This conclusion is unaffected by the trustee's argument that Bill cannot rely on Lindy's lis pendens for his own benefit, having refrained from filing any lis pendens himself. Although the lis pendens statute provides that "[a]ny person desiring the benefit of constructive notice of pending litigation must file a separate, independent notice thereof . . .", the statute does not contain any inverse limitation, such that others may not "benefit" from a lis pendens already on record. N.C.G.S. § 1-116(a). Nor does the statute require a separate lis pendens to be filed by each party to a court action. Any additional notice of the same proceeding would be redundant. The inquiry for purposes of § 544 is whether the record reflects any prior encumbrances or interests in the property, regardless of the impetus for recording evidence of the same. See Kendall Grove Joint Venture v. Martinez-Esteve, Trustee (In re Kendall Grove Joint Venture), 50 B.R. 64, 66 (Bankr. S.D. Fla. Apr. 1, 1985) (finding, in denying a motion for avoidance of a claim pursuant to § 544(a)(1), "no sound reason nor authority for the debtor's argument that [a lis pendens] protects only the interest of the party who filed the notice.") This is particularly so in this matter, where the lis pendens clearly provides each party's name and states that the parties' claims to the property are at issue. Any additional lis pendens filed by Bill would provide no further "benefit" to the record, for purposes of § 544(a)(1), as discussed above, or § 544(a)(3), as discussed below.

B.      Section 544(a)(3): The Trustee as a Bona Fide Purchaser of Real Property

Turning to § 544(a)(3), the trustee asserts that any interest claimed by Bill in Lindy's one-half undivided interest in the Disputed NC Properties is avoidable, or otherwise inferior to the trustee's interest, because a bona fide purchaser of real property would be able to avoid Bill's claimed interest for lack of notice. Section 544(a)(3) places the trustee in the position of a bona fide purchaser and "as such, the trustee may avoid a claim against the debtor's estate if a bona fide purchaser would have defeated the claim." Butler v. Deutsche Bank Trust Co. (In re Rose), Adv. Pro. No. 08-00080-8-JRL, 2009 Bankr. LEXIS 2337, at *4-5 (Bankr. E.D.N.C. July 20, 2009).

North Carolina law contemplates that "a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such an examination would disclose." Hensley v. Ramsey, 283 N.C. 714, 730 (N.C. 1973). This principle has been interpreted to extend to every "document" in the chain of title. See Butler v. Deutsche Bank Trust Co. (In re Rose), Adv. Pro. No. 08-00080-8-JRL, 2009 Bankr. LEXIS 2337, at *6 (Bankr. E.D.N.C. July 20, 2009). The court finds that the lis pendens filed by Lindy are the very sort of documents in the chain of title that would alert a bona fide purchaser to the pending State Court Proceeding affecting title to the Disputed NC Properties. As the Supreme Court of North Carolina held in Mass. Bonding & Ins. Co. v. Knox, 220 N.C. 725 (N.C. 1942),

> The effect of lis pendens and the effect of registration are in their nature the same thing. They are only different examples of instances of the operation of the rule of constructive notice. One is simply a record in one place and the other is a record in another place. They are each record notices.

220 N.C. 725, 728 (N.C. 1942). See also Chrysler Credit Corp. v. Burton, 599 F. Supp. 1313 (M.D.N.C. 1984) (noting, in an action to avoid a fraudulent conveyance under North Carolina law,

9

that had a lis pendens been filed, it would have provided constructive notice of pending litigation affecting title to the subject property); Hill v. Pinelawn Memorial Park, Inc., 304 N.C. 159, 165 (N.C. 1981) ("While actual notice of another unrecorded conveyance does not preclude the status of innocent purchaser for value, actual notice of pending litigation affecting title to the property does preclude such status."). Here, the lis pendens as to each of the Disputed NC Properties gave the trustee constructive notice of pending litigation affecting title to the properties, binding the trustee to the outcome of the pending action. See Sea Horse Realty & Construction, Inc. v. Citimortgage, Inc., Adv. Pro. No. 11-00377-8-JRL, 2012 Bankr. LEXIS 3617, *6 (Bankr. E.D.N.C. Aug. 7, 2012) (citing Kelley v. CitiFinancial Servs., Inc., 205 N.C. App. 426, 431 (N.C. 2010), and further noting that under N.C.G.S. § 1-118, "the notice of lis pendens serves as 'constructive notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed or subsequently registered is a subsequent purchaser or incumbrancer'"). Therefore, the trustee is precluded from exercising any powers under § 544(a)(3) over Bill's claim against Lindy's interest in the Disputed NC Properties.

C. Section 547(b): Avoidance of the Lis Pendens and Renewed Motion as a Preferential Transfer

The trustee further contends that the lis pendens, taken along with Bill's motion for a declaration that the Disputed NC Properties are his separate property, constitute a preferential transfer pursuant to § 547(b), which should be avoided. The trustee moves for summary judgment on subsections (1), (2), and (4) of § 547(b), which provide for avoidance of a transfer made "(1) to or for the benefit of a creditor . . . (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of transfer was an insider." 11 U.S.C. § 547(b).

The court finds it unnecessary to make a determination under subsections (1) or (2) of the statute, because subsection (4) is not satisfied. The trustee argues that the lis pendens alone cannot constitute a transfer, but Bill's January 17, 2013 "renewed" motion for a declaration of separate property combined with the lis pendens can, as only the motion provided notice of Bill's claims. Having already deemed the lis pendens sufficient constructive notice of litigation affecting title to the Disputed NC Properties, where each party is disputing record ownership of the properties, the court finds that if any transfer occurred for purposes of § 547(b), it occurred upon filing of the lis pendens. See also Ivester v. Miller, 398 B.R. 408 (M.D.N.C. 2008) (holding that a lis pendens in and of itself is sufficient to perfect an attachment lien, albeit subject to entry of a final judgment). Because the lis pendens were filed several years prior to the petition date, a "transfer" did not occur within the preference period, and § 547(b) does not apply.

C.  The Virginia Property

The pertinent portion of the Virginia lis pendens statute provides

> No lis pendens or attachment shall bind or affect a subsequent bona fide purchaser of real or personal estate for valuable consideration and without actual notice of such lis pendens or attachment, until and except from the time a memorandum setting forth the title of the cause or attachment, the general object thereof, the court wherein it is pending, the amount of the claim asserted by the plaintiff, a description of the property, the name of the person whose estate is intended to be affected thereby . . .

Va. Code Ann. § 8.01-268. The trustee asserts that the lis pendens filed in Virginia does not adequately assert the "general object" of the underlying action, in that it does not set out Bill's assertions as to Lindy's interests based on his theories estoppel, unjust enrichment, and so forth, that were raised in the Amended Answer. The description of the equitable distribution action in the Virginia lis pendens is identical to the description contained in the lis pendens filed in North

11

Carolina: "[t]hat the object of said action is for equitable distribution and to preserve claims to the property of said parties." Doc. No. 28, Exh. 30. Based on the analysis set forth in section A., above, the court finds that the Virginia lis pendens complies with the requirement of asserting the general object of the litigation, in that it provides that title to the property of the parties is at issue. The trustee further argues that the Virginia lis pendens fails to comply with the statute because it does not set forth the amount of Bill's claim. However, it likewise does not quantify Lindy's claim, yet the trustee also states that the Virginia lis pendens is sufficient to provide notice of Lindy's claims. The court notes that the amount of the claim in an equitable distribution action is rarely known at the time the complaint is filed, thus, the lis pendens should not fail on this ground. In this case, the deciding factor in determining whether the lis pendens provides constructive notice of the pending State Court Proceeding is whether the general object of the action is provided in the lis pendens. For the same reasons applicable to the lis pendens filed in North Carolina, the court finds that the Virginia lis pendens constitutes (1) record evidence of a prior interest for purposes of § 544(a)(1); (2) constructive notice of pending litigation for purposes of § 544(a)(3); and (3) the "transfer," if any, for purposes of § 547. Accordingly, and consistent with the analysis in relation to the Disputed NC Properties, above, the trustee cannot avoid of Bill's asserted interest in the Disputed VA Property pursuant to §§ 544 or 547.

D.      The LLC

Unlike the Subject Properties, in which Lindy and Bill hold joint undivided ownership interests, the membership interests in the LLC are divided such that Bill holds an 80% interest and Lindy holds a 20% interest. Thus, Lindy's membership interest in the LLC is separate and distinct from that held by Bill. In his second motion for a declaration as to separate property, Bill asserts

that based on the premarital agreement, the LLC (which is referred to in the motion as "Pleasant" Field Farm, LLC, rather than its true name, "Pheasant" Field Farm, LLC) is his separate property. The trustee seeks to avoid any interest claimed by Bill in Lindy's 20% interest in the LLC pursuant to § 544(a)(1) as a matter of law. As discussed above, § 544(a)(1) permits the trustee to avoid any competing interest over which a judicial lien creditor would have priority as of the petition date.

Under North Carolina law, a judicial lien creditor has priority over an unperfected interest in personal property. N.C.G.S. § 25-9-317(a)(2); (holding that N.C. Gen. Stat. § 25-9-317(a)(2) clearly affords priority to a lien creditor over an unperfected security interest). An interest in a limited liability company is typically held to be a 'general intangible' subject to the rules of perfection contained in Article 9 of the Uniform Commercial Code.[4] <u>How to be Secure When Your Collateral is a Security: A Guide to the Creation and Perfection of Security Interests in Investment Property under the 1994 revisions to the Uniform Commercial Code</u>, 4 N.C. Banking Inst. 183, n.9 (April 2000) (the general rule is that ownership interests in limited liability companies are general intangibles). Because Bill's claimed interest is a general intangible, he was required to file a financing statement in order to perfect his interest in the LLC. <u>See</u> N.C.G.S. § 25-9-310(a).[5] No such statement having been filed, Bill's asserted interest in Lindy's 20% membership interest in the LLC is subordinate to the trustee's interest as a hypothetical judicial lien creditor under § 544(a)(1), and therefore may be avoided as a matter of law.

Conclusion

---

[4] Except when it is deemed a security governed by Article 8 of the UCC, under the terms of the operating agreement. The operating agreement for the LLC contains no such designation.

[5] Although N.C.G.S. § 25-9-310(a) refers to "security interests," the court need not determine whether Bill's asserted interest constitutes a lien, because even if it does, the lien was not properly perfected.

In summary, the trustee may not avoid any lien or interest asserted by Bill in Lindy's interest in the Subject Properties pursuant to §§ 544(a)(1), 544(a)(3), or 547(b), and the trustee's motion for summary judgment will be denied on these grounds. The trustee may, however, avoid Bill's asserted interest in Lindy's 20% membership interest in the LLC pursuant to § 544(a)(1), and his motion for summary judgment will be granted in this regard. As a result, Bill's motion for partial summary judgment[6] will be allowed to the extent of the court's conclusions under §§ 544 and 547. Bill's motion is denied to the extent of the court's ruling as the trustee's ability to avoid Bill's asserted interest in the LLC under § 544.

Accordingly, the motion for summary judgment filed by the trustee is **DENIED IN PART**, as to the claims brought under 11 U.S.C. §§ 544 and 547 with regard to the real property at issue, and **ALLOWED IN PART**, pursuant to 11 U.S.C. § 544 as to the interest in Pheasant Field Farm, LLC only. The defendant's motion for partial summary judgment is **ALLOWED IN PART**, on the grounds that the interests asserted by defendant in the real property at issue are not avoidable by the trustee pursuant to 11 U.S.C. §§ 544 and 547, and **DENIED IN PART**, on the grounds that the interests asserted by defendant in Pheasant Field Farm, LLC is avoidable by the trustee pursuant to 11 U.S.C. § 544.[7]

**END OF DOCUMENT**

---

[6] Defendant did not seek a ruling on his counterclaims due to their factual nature, and instead requested that the court defer any hearing on the counterclaims to a later date.

[7] Nothing in this Order, however, shall be construed as a determination of the effect of the premarital agreement on title to the Disputed NC Properties or the Disputed VA Property. Although the state court has determined that the premarital agreement is enforceable, questions may exist relating to the applicability of the premarital agreement to such properties and the effect it may have on title, but those issues are not now properly before the court.